# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **VICTOR MANUEL ACOSTA,** | § | |
| **JOSE MALDONADO, ERIC** | § | |
| **STROUP, MARTA VARGAS,** | § | |
| **and SILVESTRE VARGAS,** | § | |
| **Plaintiffs,** | § | **EP-14-CV-160-PRM** |
| | § | |
| **v.** | § | |
| | § | |
| **JAIME CAMPOS,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART MOTION FOR SUMMARY JUDGMENT
## AND AMENDING ORDER GRANTING DEFAULT JUDGMENTS

On this day, the Court considered Plaintiffs Victor Acosta, Jose

Maldonado, and Eric Stroup's[1] "Motion for Summary Judgment Against

Defendant Jaime Campos" (ECF No. 168) [hereinafter "Motion"], filed

---

[1] The present action was originally filed on behalf of five individuals.  In addition to Plaintiffs Acosta, Maldonado, and Stroup—the persons bringing the present Motion—Marta and Silvestre Vargas filed claims against two defendants not implicated here.  *See* ECF No. 1.  The Vargases have since obtained default judgments against those defendants.  *See* Order Granting in Part Mots. for Default Js. 10 [hereinafter "Order on Default Judgments"], ECF No. 141.  Thus, because Plaintiffs Acosta, Maldonado, and Stroup represent the only grievants who still possess outstanding claims, and because the instant Motion is brought solely on their behalf, the Court will refer to them collectively in this Memorandum Opinion and Order as "Plaintiffs."

on March 11, 2015, in the above-captioned cause.  After due

consideration, the Court concludes that Plaintiffs' Motion should be

granted in part for the reasons that follow.

## I.    FACTUAL BACKGROUND[2]

Plaintiffs are three agricultural workers who reside in El Paso,

Texas.  Am. Compl. 2.  At the time of the events in question, Defendant

was the president and an agent of WKI Outsourcing Solutions, LLC

("WKI"), a Texas corporation.  *Id*. at 3; Resp. to compl. 1 [hereinafter

"Answer"], ECF No. 8.  In 2012, WKI contracted with two farms in

Georgia to recruit and hire workers for the farms' respective upcoming

melon harvests.  Am. Compl. 4.  To that end, Defendant recruited

Plaintiffs at a farmworkers' center and a homeless shelter, both located

in El Paso, to perform agricultural work for the two farms.  *Id*.  Plaintiff

---

[2] The factual summary offered in this section draws on Plaintiffs' "First Amended Complaint," Defendant Campos's "Response to complaint," and Plaintiffs' "First Set of Requests for Admission to Defendant Jaime Campos."  ECF Nos. 8, 92, 168-1.  Per Federal Rule of Civil Procedure 8(b)(6), Defendant has admitted any and all allegations in Plaintiffs' First Amended Complaint that he has not denied.  Pursuant to Federal Rule of Civil Procedure 36(a)(3), Defendant has admitted any matter for which Plaintiffs requested an admission and to which he failed to file a written answer or objection.

Acosta was promised three months of work, for ten to twelve hours per day, and a pay rate of $8 per hour.  Mot. Default J. Ex. 1, ECF No. 138-1.  Plaintiff Maldonado was promised three months of work and a pay rate of $8.50 per hour.  *Id*. Ex. 2, ECF No. 138-2.  Plaintiff Stroup was promised approximately nine weeks of work—from mid-June through mid-August 2012—a pay rate of $8 per hour, and transportation back to El Paso once work was completed.  *Id*. Ex. 3, ECF No. 138-3.  Neither the terms of these agreements nor the conditions of employment were ever provided to Plaintiffs in writing.  Am. Compl. 5.

After facilitating Plaintiffs' travel to Georgia via vans and buses, Defendant housed Plaintiffs in motel rooms, with two unrelated individuals assigned to each bed.  *Id*. at 6.  Plaintiffs neither received a statement of the terms and conditions of their occupancy of the housing, nor was any certification posted stating that the housing met minimum federal safety and health standards.  *Id*. at 6–7.

Plaintiff Acosta began work in June 2012 and continued working for the next two months, save for one week in which he was not able to work due to illness caused by a lack of water available in the fields.

Mot. Default J. Ex. 1.  On each day in which he worked, Plaintiff Acosta spent nine-and-a-half hours toiling in the fields—for this labor, he received a total of $1,314.  *Id.*  At the end of those two months, no additional work was provided.  *Id.*

Plaintiff Maldonado stayed in Georgia for ten days total.  *Id.* Ex. 2.  During that period, he worked for eight-and-a-half hours per day for two days.  *Id.*  For that work, he received a total of $169.  *Id.*  Plaintiff Maldonado received no additional work beyond those two days.  *Id.*

Plaintiff Stroup began work on June 12, 2012, but received no work after June 18, 2012.  *Id.* Ex. 3.  During four of those days, Plaintiff Stroup worked approximately eight hours per day; during the remaining two days, Plaintiff Stroup worked approximately six hours per day.  *Id.*  He received a total of $320 for this work.  *Id.*  Plaintiff Stroup also paid for his own bus ticket back to El Paso, which cost him $207.  *Id.*

On April 30, 2014, Plaintiffs filed suit in federal district court alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq., and the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  Compl. 9–12, ECF No.

1.  They also proffered state-law claims of breach of contract and

fraud/fraudulent inducement.  *Id.* at 13–14.  On September 19, 2014,

Plaintiffs filed their Amended Complaint.  ECF No. 92.  Despite having

already made an appearance in the case, *see* Answer, ECF No. 8,

Defendant filed no responsive pleading.  On November 6, 2014, counsel

for Plaintiffs sent to Defendant via Certified Mail and email a "First Set

of Requests for Admission" (ECF No. 168-1).  Although the documents

were received the next day, *see* Mot. Ex. 1, Defendant did not respond.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall

grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  A genuine dispute will be found to exist "if the

evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347,

350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)) (internal quotation marks omitted).

"Under Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of . . . 'identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In determining whether the movant has satisfied this burden, a court "consider[s] evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in favor of that party." *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

## III.   ANALYSIS

Plaintiffs ask the Court to enter summary judgment against Defendant as to their AWPA and FLSA claims, as well as Plaintiff Acosta's individual claim of fraud/fraudulent inducement.  The Court will address each claim in turn.

### A.   The Migrant and Seasonal Agricultural Worker Protection Act

Plaintiffs' first cause of action arises under the AWPA, which seeks to "assure necessary protections for migrant and seasonal

6

agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. To that end, the statute imposes certain obligations on farm labor contractors—individuals "who, for any money or other valuable consideration paid or promised to be paid, performs any farm labor contracting activity," which includes "recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker." 29 U.S.C. § 1802(6), (7). Migrant agricultural workers include those who are "employed in agricultural employment of a seasonal or other temporary nature, and who [are] required to be absent overnight from his permanent place of residence." *Id*. § 1802(8)(A). Defendant—who recruited Plaintiffs to perform agricultural work for Georgia farms in his capacity as the president of WKI—qualifies as the former, while Plaintiffs—who were brought to Georgia from Texas for multiple days to assist with the melon harvests of two farms—qualify as the latter.

Plaintiffs contend that Defendant committed eleven violations of the AWPA in recruiting and hiring them to perform agricultural work for the two Georgia farms. Specifically, they allege that Defendant

(1)     knowingly provided false and misleading information

regarding the terms and conditions of Plaintiffs' employment,

in violation of § 1821(f);

(2)     failed to state the terms and conditions of their employment

in writing, in violation of § 1821(a);

(3)     failed to ensure that the housing provided to Plaintiffs

complied with applicable federal and state health and safety

standards, in violation of § 1823(a);

(4)     failed to post or provide Plaintiffs with a statement of the

terms and conditions of their occupancy of the housing, in

violation of § 1821(c);

(5)     failed to post at Plaintiffs' place of employment a poster

setting forth their rights and remedies under the AWPA, in

violation of § 1821(b);

(6)     failed to provide written information and disclosures to

Plaintiffs Acosta and Maldonado in Spanish, in violation of §

1821(g);

(7)     failed to ensure that the vehicles used to transport Plaintiffs
        complied with federal and state safety standards, in violation
        of § 1841(b);

(8)     failed to ensure that the drivers transporting Plaintiffs
        possessed valid driver's licenses, in violation of § 1841(b);

(9)     failed to obtain insurance or liability bonds for the vehicles
        used to transport Plaintiffs, in violation of § 1841(b);

(10)    failed to pay Plaintiff Acosta the wages owed to him when
        due, in violation of § 1822(a); and

(11)    failed to provide the amount of work and pay rates he
        promised to Plaintiffs, in violation of § 1822(c).

Mot. 7–8.

### 1.    AWPA Violations #1 – #10

There exists no genuine dispute as to whether Defendant
committed allegations one through ten above.  As noted at Part I *supra*,
Defendant failed to contest any of the allegations contained in
Plaintiffs' Amended Complaint, and he offered no responses to
Plaintiffs' Request for Admissions.  Thus, accepting Plaintiffs'

allegations as admitted, the record in this case conclusively establishes

that Defendant violated the AWPA in the ways set forth at points one

through ten above.  *See, e.g.*, Am. Compl. ¶¶ 26, 53 (false and

misleading terms of employment); *id.* ¶ 28 (terms and conditions in

writing); Mot. Ex. 1, ¶ 27 (ensuring housing complied with federal and

state standards); *id.* ¶ 12 (terms and conditions of housing); *id.* ¶ 25

(posters listing AWPA rights); *id.* ¶ 33 (disclosures in Spanish); *id.* ¶ 30

(vehicle compliance with federal and state standards); *id.* ¶ 31 (driver's

licenses); *id.* ¶ 32 (insurance or liability bond); *id.* ¶ 34 (payment of

wages to Plaintiff Acosta).

Pursuant to the AWPA, intentional[3] statutory violations may

merit "damages up to and including an amount equal to the amount of

---

[3] The Fifth Circuit has not addressed the AWPA's use of the phrase
"intentionally violated" in § 1854(c)(1).  Previously, however, in the
context of the Farm Labor Contractor Registration Act of 1963
("FLCRA"), 7 U.S.C. § 2041 et seq., the Fifth Circuit held that
"[i]ntentional means 'conscious or deliberate.'"  *Salazar-Calderon v.
Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1345 (5th Cir. 1985)
(quoting *Castillo v. Givens*, 704 F.2d 181, 197 (5th Cir. 1983)).  "[T]he
legislative history of the [AWPA] indicates that the standard [for
intentional] is identical to that in the analogous FLCRA provision."
*Bueno v. Mattner*, 829 F.2d 1380, 1385 n.4 (6th Cir. 1987).  Accordingly,
the Court applies the "conscious or deliberate" standard here in the

actual damages, or statutory damages of up to $500 per plaintiff per violation." 29 U.S.C. § 1854(c)(1). In their Motion, Plaintiffs each seek the maximum statutory violation for alleged violations one through ten. Given Plaintiff's uncontested factual allegations, the Court will grant the requested relief.[4]

### 2.    AWPA Violation #11

Allegation eleven charges that Defendant failed to comply with the terms of the work arrangements he made with Plaintiffs. As above, the truth of this allegation is entirely uncontested. *See, e.g.*, Mot. Ex. 1, ¶¶ 4, 19, 20 (Acosta); *id.* ¶¶ 5, 17 (Maldonado); *id.* ¶¶ 6, 14, 15, 16 (Stroup). As for the issue of damages, Plaintiffs here ask for actual damages in lieu of statutory damages. Mot. 9. As noted above, the

---

AWPA context, just as the Court of Appeals for the Sixth Circuit has done. *See id.* at 1386. Moreover, in any event, Plaintiffs' allegations satisfy this standard, as Defendant admits to "intentionally violat[ing] [Plaintiffs'] rights under the AWPA." Am. Compl. 9.

[4] Allegation six pertains only to Plaintiffs Acosta and Maldonado, while allegation ten pertains only to Plaintiff Acosta. Accordingly, only Plaintiffs Acosta and Maldonado will recover $500 in statutory damages for allegation six, and only Plaintiff Acosta will recover $500 in statutory damages for allegation ten.

AWPA expressly provides for such an award of damages, *see* 29 U.S.C. § 1854 (c)(1), and thus the Court will grant Plaintiffs' request.

The Court has previously computed the actual damages suffered by Plaintiffs as a result of WKI's "fail[ure] to comply with the terms of the employment agreements it reached with Plaintiffs." Order on Default Js. 10. Defendant, as the president and agent of WKI, personally contracted with Plaintiffs in reaching those employment agreements. Am. Compl. 5. Thus, Plaintiffs' actual damages, whether calculated in the context of WKI or Defendant, are the same—the injuries suffered by Plaintiffs as a result of not seeing the terms of their employment agreements honored are identical. The Court will therefore assess actual damages against Defendant for this violation of the AWPA using the same figures it employed in its Order on Default Judgments: $2,240 for Plaintiff Acosta, $5,543 for Plaintiff Maldonado, and $3,919 for Plaintiff Stroup.

The Court notes that in their present Motion, Plaintiffs offer calculations of their actual damages that differ from the totals previously stated in their "Motion for Default Judgment Against

Defendant WKI Outsourcing Solutions, LLC" (ECF No. 138)

[hereinafter "Motion for Default Judgment"].[5]  Plaintiffs neither

acknowledge nor explain these variations.  As noted above, the actual

damages stemming from this violation of the AWPA are identical

whether calculated in the context of WKI or Defendant.  Consequently,

the Court finds that it would be inequitable to assess a different amount

of actual damages against Defendant than it previously assessed

against WKI.  For that reason, it will adhere to its earlier computation

of Plaintiffs' actual damages.

---

[5] In the present Motion, Plaintiffs suggest that Plaintiff Acosta should
have had the opportunity pursuant to his employment agreement with
WKI to earn a total of $7,200, and they thus calculate his expectation
damages to be $5,886.  Mot. 10–11.  However, in their Motion for
Default Judgment, they suggested that Plaintiff Acosta should have had
the opportunity to earn a total of $6,720 and calculated his expectation
damages to be $3,196—"$2,996 for the additional work WKI promised
but did not provide and . . . $200 that [Plaintiff Acosta] spent on
medicine."  Mot. Default J. 4, Ex. 1.  Similar discrepancies exist in the
context of Plaintiffs' calculations of Plaintiffs Maldonado and Stroup's
actual damages.  They currently assert that Plaintiff Maldonado's
actual damages total $5,951, Mot. 11, but earlier computed his actual
damages to be $6,358, Mot. Default J. 4.  Similarly, Plaintiffs currently
assert that Plaintiff Stroup's actual damages total $5,647, Mot. 11, but
earlier computed his actual damages to be $3,583, Mot. Default J. 4.

**B.     The Fair Labor Standards Act**

**a.     Unpaid Minimum Wages**

Plaintiffs further charge that Defendant violated the FLSA in

paying Plaintiff Acosta less than the federal minimum wage for

agricultural work he performed in Georgia.  Am. Compl. 12.  The FLSA

provides that "[a]ny employer who violates [the federal minimum wage

law] . . . shall be liable to the employee or employees affected in the

amount of their unpaid minimum wages . . . and in an additional equal

amount as liquidated damages."  29 U.S.C. § 216(b).  Defendant

qualifies as an employer for purposes of the FLSA because, according to

the uncontested evidence before the Court, he "(1) possessed the power

to hire and fire employees; (2) supervised or controlled employee work

schedules or conditions of employment; [and] (3) determined the rate or

method of payment."  *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d

247, 251 (5th Cir. 2012) (quoting *Gray v. Powers*, 673 F.3d 352, 355 (5th

Cir. 2012)) (internal quotation mark omitted).  *See* Am. Compl. 5, 7

(Defendant hired and set the end date for Plaintiffs' employment); Mot.

Ex. 1, ¶¶ 11, 21 (Defendant transported Plaintiffs to the worksite and

directed their duties); *id*. ¶¶ 14, 20, 22 (Defendant set Plaintiffs' pay rates).

The Court previously determined in its Order on Default Judgments that WKI was liable for Plaintiff Acosta's unpaid minimum wages, and further granted him the same amount in liquidated damages "because there [was] no evidence that WKI acted in good faith or had reasonable grounds to believe that its actions complied with the FLSA."  Order on Default Js. 25.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)) (internal quotation marks omitted); *see also Lee v. Coahoma Cnty., Miss*., 937 F.2d 220, 226 (5th Cir. 1991) ("If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA.").  Thus, Defendant, as the

president of WKI and who acted in its stead as its agent, is jointly and severally liable for Plaintiff Acosta's unpaid minimum wages.

In its Order on Default Judgments, the Court determined that Plaintiff Acosta would have received an additional $1,461.22 if he had been compensated for his work at the federal minimum wage.  Order on Default Js. 25.  Plaintiffs alert the Court in their Motion, however, that it erred when it took into account potential overtime pay to which Plaintiff Acosta might have been entitled when calculating his unpaid minimum wages.  Mot. 17.  As they rightly point out, federal overtime requirements do not apply in the context of "an[] employee employed in agriculture."  29 U.S.C. § 213(b)(12).  Thus, in reconsidering the issue, the Court finds that Plaintiff Acosta is due $2,060.88 in unpaid minimum wages.[6]  For the reasons offered in its Order on Default Judgments, Defendant and WKI are jointly and severally liable for this

---

[6] The federal minimum wage at the time of the events in question was $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).  Having worked nine-and-a-half hours per day, seven days per week, for seven weeks, Plaintiff Acosta should have received at least $3,374.88 in wages.  He only received $1,314.  *See* Mot. Default J. Ex. 1.

16

amount, as well as for Plaintiff Acosta's liquidated damages in the same amount.

### b.   Attorney's Fees

The FLSA provides that "in addition to any judgment awarded to the plaintiff or plaintiffs, [a court may] allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Accordingly, Plaintiff Acosta seeks an award of attorney's fees and costs totaling $12,900—this includes $12,450 for the fifty hours his counsel expended on his FLSA claim at a rate of $250 per hour, $50 for serving Defendant, and $400 for the filing costs of this action.

As discussed in the Court's Order on Default Judgments, computation of an award of reasonable attorney's fees is a two-step process. "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citation omitted). "The product of this multiplication is the lodestar,

which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case." *Id.*

The Court has previously found the hourly fee charged by Plaintiff Acosta's counsel to be reasonable. *See* Order on Default Js. 27. The Court now finds that Plaintiff Acosta seeks attorney's fees for a reasonable number of hours spent in furtherance of his FLSA claim. His counsel attests in a declaration that she "reviewed the itemization of [her] time" to ensure that the cited tasks pertained to Plaintiff Acosta's FLSA claim, and considered whether any time was excessive, should be reduced, or eliminated altogether. Mot. Ex. 2. Moreover, after reviewing the time records appended to her affidavit, the Court notes that none of the tasks listed overlap with tasks for which Plaintiff Acosta sought attorney's fees in his FLSA claim against WKI.[7] Stated more plainly, even though Plaintiff Acosta sought and was awarded attorney's fees in his FLSA claim against WKI, the hours for which he now seeks attorney's fees in his FLSA claim against Defendant pertain to separate activities. There is, in short, no double-recovery being

_____

[7] Plaintiff Acosta was ultimately awarded attorney's fees pursuant to his breach-of-contract claim against WKI. *See* Order on Default Js. 27.

pursued.  Thus, in light of the nature of the tasks performed by Plaintiff Acosta's counsel and their relation to the issues raised in his FLSA claim, the Court will award attorney's fees for the fifty hours his counsel reasonably spent on this claim.

As for Plaintiff Acosta's request for costs, the Court will grant his request for $50 to compensate him for the amount he spent to serve Defendant in this lawsuit.  Plaintiff also requests $400 in costs as recompense for the expense of filing the present action.  However, the Court previously awarded Plaintiff Acosta $400 in costs against WKI for fees related to the filing of this action.  *See* Order on Default Js. 27. Thus, the Court will instead make Defendant jointly and severally liable for those costs.  *See Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010) ("The decision to impose any fee award against one or all the Defendants, jointly and severally, is within the court's discretion.").

### C.    Fraud/Fraudulent Inducement

#### a.    Common Law Fraud

Plaintiffs' final claim against Defendant alleges that he committed fraud in negotiating their employment agreements with WKI.  A party

seeking to prevail on a fraud claim brought pursuant to Texas state law

must make a four-part showing:

> (1) the defendant made a material misrepresentation; (2) the
> defendant knew the representation was false or made the
> representation recklessly without any knowledge of its truth;
> (3) the defendant made the representation with the intent
> that the other party would act on that representation or
> intended to induce the party's reliance on the representation;
> and (4) the plaintiff suffered an injury by actively and
> justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co., LC*, 348 S.W.3d 194, 217 (Tex.

2011).

The record before the Court demonstrates that Plaintiffs have

satisfied this burden.  The alleged misrepresentations made by

Defendant to Plaintiffs are clearly material—they pertain to the

amount and length of work that they would be tasked with performing

for out-of-state farms, as well as the rate at which they would be

compensated.  Moreover, Defendant has admitted to making misleading

representations knowingly to Plaintiffs with the intent that they (1) act

on the misrepresentations, and (2) enter into binding employment

agreements based on the misrepresentations.  *See* Mot. Ex. 1, ¶ 7.

Finally, Plaintiffs all aver that after traveling to Georgia in order to

perform the work to which they and WKI had agreed, they received

neither the amount of work nor the rates of compensation that had been

promised.  *See* Mot. Default Js. 4, Exs. 1, 2, 3.

Regarding damages, "Texas recognizes two measures of direct

damages for common-law fraud:  the out-of-pocket measure and the

benefit-of-the-bargain measure." *Aquaplex, Inc. v. Rancho La Valencia,*

*Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (quoting *Formosa Plastics Corp.*

*USA  v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex.

1998)) (internal quotation mark omitted).  The latter "computes the

difference between the value as represented and the value received."

*Id.* (quoting *Formosa Plastics*, 960 S.W.2d at 49) (internal quotation

mark omitted).

In light of the relatively small amount of out-of-pocket costs

incurred by Plaintiffs as a result of Defendant's fraud, as compared to

the anticipated benefits of their respective employment agreements that

Plaintiffs failed to reap, the Court finds it appropriate to award

Plaintiffs the benefit-of-the-bargain measure for their fraud claim.  The

Court further agrees with Plaintiffs that this measure equates to the

figure of actual damages computed in the context of Plaintiffs' AWPA claim.  The Court will therefore award $2,240 to Plaintiff Acosta, $5,543 to Plaintiff Maldonado, and $3,919 to Plaintiff Stroup in expectation damages.

### b.  Exemplary Damages

Finally, Plaintiffs ask the Court to grant them exemplary damages in their fraud claim against Defendant at a rate of four times their actual damages.  Mot. 16.  This totals just under $70,000 by Plaintiffs' math.  *Id*.  Plaintiffs point out that Texas state law specifically provides for exemplary damages where a "claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . fraud."  Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(1).  They additionally assert that such an award would be justified in the present case "to ensure [Defendant] ceases [his] business model of misleading and mistreating workers."  Mot. 15.

### 1.     Applicable Law

Awards of exemplary damages are regulated by the Texas Civil Practice and Remedies Code, which requires that "[b]efore making an award of exemplary damages, the trier of fact shall consider the definition and purposes of exemplary damages as provided by Section 41.001." § 41.010(a).  That section defines "exemplary damages" as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." § 41.001(5).  Additionally, § 41.011 instructs the trier of fact to consider, to the extent possible, "(1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant." § 41.011(a).

The Texas Supreme Court has also weighed in regarding when an award of exemplary damages is appropriate.  That court has twice cited with approval the following excerpt from the Corpus Juris Secundum.

> The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages.  The act complained of not only must be unlawful but also must

> partake of a wanton and malicious nature, or, as sometimes
> stated, somewhat of a criminal or wanton nature, and an act
> will not be deemed malicious, and so warranting punitive
> damages, merely because it is unlawful or wrongful.

25 C.J.S. Damages § 123(5); *see also Livingston v. Gage*, 581 S.W.2d

187, 191 (Tex. App.—El Paso 1978, writ ref'd) (discussing the Texas

Supreme Court's citations with approval of the above-cited passage).

Thus, in the context of fraud, the Texas Supreme Court has recognized

that "exemplary damages may properly be awarded when the plaintiff

has suffered actual damage as the result of fraud intentionally

committed for the purpose of injuring him." *Dennis v. Dial Fin. &*

*Thrift Co.*, 401 S.W.2d 803, 805 (Tex. 1966).

### 2.   Analysis

As the foregoing summary of governing law makes clear,

Defendant has, at the very least, rendered himself eligible for an award

of exemplary damages.  By virtue of his failure to respond to Plaintiffs'

Amended Complaint and Requests for Admissions, he has admitted

that he "knowingly and recklessly made material, false, and misleading

representations . . . with the intent that Plaintiffs act on them and with

the intent that Plaintiffs enter into binding [employment] agreements

based on them." Mot. Ex. 1.  Moreover, the fact that Plaintiffs suffered financial harm as a consequence of Defendant's actions is uncontested. And finally, at least three of the considerations set forth in § 41.011— the nature of the wrong, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety—militate in favor of granting exemplary damages.  As charged in Plaintiffs' Amended Complaint, Defendant fraudulently induced members of a vulnerable population to enter into employment agreements for out-of-state work, which he never intended to honor and never did honor.

On the other hand, the Court cannot ignore the fact that Defendant has not affirmatively admitted to engaging in such conduct. Rather, he has *constructively* admitted Plaintiffs' factual allegations by virtue of his failure to respond.  As such, Plaintiffs' charges are not ratified facts, but rather unrebutted averments.  It is thus difficult to assess the character of Defendant's conduct and his degree of culpability, as required by § 41.011(a).  As for the final statutory consideration—Defendant's net worth—it militates *against* an award of

punitive damages, as he filed a Chapter 13 bankruptcy petition in 2011 and proceedings remain ongoing.  *See In re Campos*, No. 11-31005-HCM (Bankr. W.D. Tex. 2001).[8]

Despite the fact that Defendant has made an appearance in this action and has participated from time to time, *see* ECF Nos. 8, 31, 79, 110, 122, his failure to provide written responses to Plaintiffs' Amended Complaint, Requests for Admissions, and Motion for Summary Judgment effectively converts the present Motion into one for default judgment.  "[T]o sustain an award of additional damages in a default judgment, [a party] must both plead knowing conduct *and* present evidence that the extent of [the defaulting party's] knowledge warrants additional damages."  *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 872 (Tex. App.—Houston 1995, no pet.) (emphasis in original).  "Punitive damages are not regarded as admitted by the default."  *Sunrizon Homes, Inc. v. Fuller*, 747 S.W.2d 530, 534 (Tex.

---

[8] "[A] court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom."  *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 (5th Cir. 2010) (quoting *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)) (internal quotation marks omitted).

App.—San Antonio 1988, writ denied).  By this standard, Plaintiffs'
request for exemplary damages fails.  Although they *pleaded* knowing
conduct on Defendant's part, they did not "*present evidence* that the
extent of [his] knowledge warrants additional damages."  *Herbert*, 915
S.W.2d at 872 (emphasis added).

## IV.  CONCLUSION

After reviewing Plaintiffs' Motion and the record in this case, the
Court finds that no genuine dispute exists as to any material fact, and
that Plaintiffs are entitled to judgment as a matter of law on their
AWPA, FLSA, and fraud/fraudulent inducement claims.  It will
therefore enter summary judgment against Defendant.

Accordingly, **IT IS ORDERED** that Plaintiffs Victor Acosta, Jose
Maldonado, and Eric Stroup's "Motion for Summary Judgment Against
Defendant Jaime Campos" (ECF No. 168) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Victor Acosta shall
**RECOVER** against Defendant Jaime Campos (1) $5,000 in statutory
damages for ten violations of the Migrant and Seasonal Agricultural
Worker Protection Act, (2) $2,240 in actual damages for one violation of

the Migrant and Seasonal Agricultural Worker Protection Act, and (3) $2,240 in expectation damages for his fraud/fraudulent inducement claim.

**IT IS FURTHER ORDERED** that Plaintiff Jose Maldonado shall **RECOVER** against Defendant Jaime Campos (1) $4,500 in statutory damages for nine violations of the Migrant and Seasonal Agricultural Worker Protection Act, (2) $5,543 in actual damages for one violation of the Migrant and Seasonal Agricultural Worker Protection Act, and (3) $5,543 in expectation damages for his fraud/fraudulent inducement claim.

**IT IS FURTHER ORDERED** that Plaintiff Eric Stroup shall **RECOVER** against Defendant Jaime Campos (1) $4,000 in statutory damages for eight violations of the Migrant and Seasonal Agricultural Worker Protection Act, (2) $3,919 in actual damages for one violation of the Migrant and Seasonal Agricultural Worker Protection Act, and (3) $3,919 in expectation damages for his fraud/fraudulent inducement claim.

**IT IS FURTHER ORDERED** that Defendants Jaime Campos and WKI Outsourcing Solutions, LLC, shall be **JOINTLY AND SEVERALLY LIABLE** to Plaintiff Victor Acosta for (1) $2,060.88 in unpaid minimum wages pursuant to the Fair Labor Standards Act, and (2) $2,060.88 in liquidated damages pursuant to the Fair Labor Standards Act.  Additionally, of the $450 in costs that Defendant WKI Outsourcing Solutions, LLC, was ordered to pay to Plaintiff Victor Acosta in the Court's "Order Granting in Part Motions for Default Judgments" (ECF No. 141), Defendants Jaime Campos and WKI Outsourcing Solutions, LLC, shall be **JOINTLY AND SEVERALLY LIABLE** for $400 of that amount.  The orders contained in this paragraph hereby **AMEND** the default judgment the Court entered against Defendant WKI Outsourcing Solutions, LLC, in its "Order Granting in Part Motions for Default Judgments."

**IT IS FURTHER ORDERED** that Defendant Jaime Campos shall **PAY** attorney's fees and costs to Plaintiffs Victor Acosta in the amount of $12,500.

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter.

**SIGNED** this **17th day** of **April, 2015**.

_____
**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**